## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARIAN DINAPOLI d/b/a<br>ARI FAMILY DENTAL, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | C.A. No. 18-cv-10776 |
| YELP INC., | ) ) |  |
| Defendant. | ) ) ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT YELP INC.'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS

Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Tel:  (617) 456-8018

Aaron Schur, *Of Counsel*
aschur@yelp.com
Nicolette Martz, *Of Counsel*
nmartz@yelp.com
YELP INC.
140 New Montgomery St.
San Francisco, CA 94105
Tel.: (415) 908-3801

<u>INTRODUCTION</u>

Plaintiff Arian DiNapoli, a dentist, seeks damages and injunctive relief based on an allegedly defamatory review of his services written by a former patient, "Joanne S." ("Joanne"). Rather than resolve Joanne's concerns directly with her, DiNapoli has chosen to bring claims against Yelp Inc., ("Yelp"), the company that owns and operates the popular website on which Joanne posted her opinions about her apparently unsatisfactory experiences.

DiNapoli's lawsuit is subject to the California anti-SLAPP Law, Cal. Civ. Proc. Code, § 425.16, which requires a party who sues over the exercise of free speech on an issue of public interest to demonstrate a probability of success. Cal. Civ. Proc. Code § 425.16(b),(e). California law governs DiNapoli's claims because he expressly agreed to its application when he registered a Yelp account to manage the listing for his business, "Ari Family Dental." That registration provided DiNapoli with tools to which he would not otherwise have had access, such as the ability to post public responses to consumer reviews (a feature DiNapoli used in response to Joanne's review) and to publicize other information about his business. DiNapoli cannot demonstrate a probability of success, as required, because a federal statute, Section 230 of the Communications Decency Act, provides immunity to sites like Yelp from suits based on posts by their third-party users. 47 U.S.C. § 230(c)(1). All of DiNapoli's claims arise from the review by Joanne, a Yelp user. Accordingly, Yelp's special motion to strike should be granted, and the complaint should be dismissed for failure to state a claim.

In further support of its motion, Yelp submits the accompanying affidavits of Vince Sollitto, Ian MacBean, and Jeffrey Pyle, and further states as follows.

1

<u>BACKGROUND</u>

The following facts are drawn from the allegations of the complaint, documents referenced therein, and—for purposes of the special motion to strike—the accompanying affidavits of Ian MacBean, Vince Sollitto, and Jeffrey Pyle. *Brill Media Co., LLC v. TCW Group, Inc.* 132 Cal.App.4th 324, 330 (2005) ("In determining whether the moving party has met its initial burden," on an anti-SLAPP motion, "courts consider the pleadings, declarations, and matters that may be judicially noticed.")

Yelp owns and operates Yelp.com, a social networking and search website and related mobile applications. (Affidavit of Vince Sollitto ("Sollitto Aff."), ¶ 3). Yelp allows members of the public to read and write reviews about local businesses, government services, and other entities. (*Id.,* ¶ 4). Yelp's goal is to help the public make more informed choices about local businesses, products and services, and to help individuals more fully participate in their local community. (*Id.*, ¶ 3). Reviews and star-based ratings of a business appear on the business's Yelp page, along with an aggregate rating. (*Id.*, ¶ 11). To enhance the reliability of the website, Yelp uses automated software to categorize reviews as "recommended" or "not recommended." (*Id.* ¶ 17). As described in the Sollitto Affidavit, the software depends on multiple factors and runs on a daily basis—accordingly, reviews commonly switch back and forth from the "recommended" and "not recommended" lists. (*Id.*, ¶ 18). The software does not favor advertisers or punish non-advertisers. (*Id.*).

Arian DiNapoli ("DiNapoli") is a West Roxbury dentist doing business as "Ari Family Dental." (Complaint, ¶ 1). On January 29, 2016, a former patient identifying herself as "Joanne S." posted a review of DiNapoli's services on Yelp.com. (Complaint, ¶ 4, 12). This review read:

> Dr. DiNapoli has ruined my teeth. I got two bridges from him. On one side, I can't chew at all, have not been able to enjoy anything hot or cold because it is painful.

2

>The other side is way too small, so I often aspirate from not being able to masticate properly. I wake up nightly because my teeth are hitting against each other uncomfortably and have had a headache daily since he "finished" in August, 2015. He did more work than we discussed, charged me significantly more than we'd agreed and does not give receipts for cash, which he then says you never gave him! Beware!

(Affidavit of Ian MacBean ("MacBean Aff."), Ex. B at 4). According to DiNapoli's complaint, Yelp displayed the review on the Ari Family Dental review page as one that was "not recommended" by Yelp. (Complaint, ¶ 13).

On February 5, 2016, a representative of Ari Family Dental, identifying himself as DiNapoli and using the email address frontdesk@arifamilydental.com, registered for a free Yelp business account for Ari Family Dental. (MacBean Aff., ¶ 8, and Ex. D). On the same day, DiNapoli used his business account to respond to the critical review, as follows:

>A note to the potential Reader of the above review:

>Please consider the fact that there's always more than one side to a story, and we have a lot to say and explain about the above public review, but due to doctor-patient confidentiality and more importantly as a courtesy we would have to refrain from mentioning them in this public forum. We feel very unfortunate to have been placed in such a situation.

>Thank you very much for reading this note.

(MacBean Aff., Ex. B at 4). DiNapoli also used his Yelp business account to add information about Ari Family Dental—such as a statement that reads, "We provide high quality and personal dental treatments for the entire family." (Id., ¶ 8). These features would not have been available to DiNapoli unless he had registered for his free business account. (Id.).

To create his business account and claim the "Ari Family Dental" page on Yelp's website, DiNapoli had to go to biz.yelp.com to complete an online registration form and electronically submit the form to Yelp. (MacBean Aff., ¶ 9 and Ex. E). The online registration process for a user to claim a business listing states: "By clicking the button below, you represent

3

that you have authority to claim this account on behalf of this business, and agree to Yelp's

Terms of Service and Privacy Policy." (*Id.*) The words "Terms of Service" were in blue font and

hyperlinked such that when Mr. DiNapoli clicked on the text, he would have been taken to the

Yelp Terms of Service agreement. (*Id.*, ¶ 10). The words "button below" refers to a red button

underneath the text that takes the user to the next step in the registration process. (*Id.*). In order to

claim his business listing, DiNapoli would have had to click on the button manifesting his

agreement to the Terms of Service. (*Id.*). As part of the business account claiming process,

Business users also must agree to the Terms of Service and Privacy Policy each time they log

into their business accounts on Yelp. (*Id.*).

Among other things, the terms of service provide that "California law will govern these

Terms, as well as any claim, cause of action or dispute that might arise between you and Yelp (a

'Claim'), without regard to conflict of law provisions. (Mac Bean Aff., Ex. A, ¶ 13 ("CHOICE

OF LAW AND VENUE")).

DiNapoli alleges that on March 9, 2016, approximately a month after he registered for his

business account, "Yelp contacted Ari Family Dental attempting to sell DiNapoli advertising

space on its website." (Complaint, ¶ 15). DiNapoli declined. (*Id.*).

On June 6, 2016, Joanne posted an "update" to her January 2016 review:

> Update to my previous review: I haven't been able to chew on the bridge Dr.
> DiNapoli put in on the upper left side of my mouth since day one. At first, the
> pain was unbearable, where I couldn't even put my teeth together. I called the
> office and he called me a liar. On February 11, 2016, I showed my friend, who
> works in a lab building bridges, that a shard was sticking out from between the
> bridge and my gum. She told me it was a sliver of the enamel. On February 15,
> the shard came out and so did the constant pain. I was so relieved, but I still can't
> chew on it because it's too sensitive, I feel all hot and cold in the two teeth he
> whittled down to hold the bridge and it still is jarring to put my teeth together.
>
> Tonight, I was sitting down to eat my chicken supper and the other bridge, on the
> bottom right, has come out! I complained to Dr. DiNapoli that the bridge was too

4

loose and moved when I'd eat, but to no avail. Also, the front tooth I'd told him was hitting funny because of the lower bridge being too short, has broken considerably and is fractured all around, looking like it will split at any time.

I want to warn others because even if you have an excellent case against a dentist, you need to get a lawyer, pay expenses and see another dentist to consult and assess the situation. I used ALL my inheritance to have my teeth fixed and now I'm out of luck. Dr. DiNapoli screamed at me when I called him and said I was a danger and he was going to call the police on me, whereas the last time I saw him, he said he considered me a friend. I guess you're only friends when you don't have issues after he's finished with you.

Anyone know a good dentist? I don't!

(MacBean Aff., Ex. B at 4). DiNapoli did not update his response to reply to this update. (*Id.*).

According to the complaint, on October 5, 2016, January 19, 2017, January 26, 2017, Yelp again contacted DiNapoli to try to sell him advertising packages on Yelp. Each time, DiNapoli declined. (Complaint, ¶¶ 17-23). He alleges that at some point after January 26, 2017, Yelp then "suddenly re-characterized [Joanne's] one-star review of DiNapoli's dental practice from 'Unreliable' and 'Not Recommended' to 'Reliable' and 'Recommended,' and promoted said Review to the #3-ranked 'Reliable' and 'Recommended' review of Ari Family Dental." (Complaint, ¶ 24). DiNapoli does not state when this alleged change occurred. DiNapoli alleges (1) that this change "displaced" more positive customer reviews of his practice, (Complaint, ¶ 25); (2) that Yelp treats certain positive customer reviews of Ari Family Dental as "not recommended," (Complaint, ¶ 26); (3) that Yelp "sold advertising space to nearby dental practices which Yelp knew to be in direct competition with Ari Family Dental," (Complaint, ¶ 27); and (4) that Yelp displayed those ads "immediately adjacent to DiNapoli's user reviews – which arbitrarily include the sole negative Review as the #3 ranked review of Ari Family Dental." (Complaint, ¶ 28). Without explanation, DiNapoli labels these acts "extortionary." (Complaint, ¶ 35).

5

DiNapoli's two-count complaint, filed in the Suffolk Superior Court on March 22, 2018, purports to bring claims for violation of Mass. Gen. Laws c. 93A, § 11 and "Negligent Mode of Operation." DiNapoli served the summons and complaint on April 3, 2018, and Yelp timely removed the action to this Court. (Doc. No. 1, Notice of Removal).

ARGUMENT

## I.      CALIFORNIA LAW APPLIES TO THIS LAWSUIT.

DiNapoli agreed to Yelp's terms of service, which include a California choice-of-law provision, when he created his business account with Yelp.com. As set forth in the MacBean Affidavit, on February 5, 2016, DiNapoli "claimed" his business listing for Ari Family Dental by "clicking" a button on a page of the website that stated: "By clicking the button below, you . . . agree to Yelp's Terms of Service and Privacy Policy." (MacBean Aff., ¶ 8 and Ex. D). The words "Terms of Service" were hyperlinked to Yelp's terms of service, which prominently display the California choice of law provision. (*Id.*, ¶ 10). As the MacBean Affidavit states, DiNapoli could not have created his business listing without agreeing to the Terms of Service in this manner. (*Id.*, ¶ 9).

Online terms of service are enforceable under these circumstances. In *Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016), for example, the court held that a hyperlink to terms of service on the final page of a website registration process, coupled with the words, "By creating an . . . account, you agree to the Terms of Service & Privacy Policy," was "prominent enough to put a reasonable user on notice of the terms of the Agreement." *Id.* ("A reasonable user who cared to pursue the issue would have inquiry notice of the terms of the Agreement challenged by the plaintiffs.") In so holding, the court relied on the longstanding Massachusetts rule that "'[t]ypically, one who signs a written

agreement is bound by its terms whether he reads and understands them or not.'" *Id.*, quoting

*Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 44 (1st Cir. 2012) (internal quotations omitted).

Other cases are to similar effect. *CR Assocs. L.P. v. Sparefoot, Inc.*, No. CV 17-10551-LTS,

2018 WL 988056, at *4 (D. Mass. Feb. 20, 2018) (holding that "the availability of the terms of

services were communicated to [plaintiff] by a blue hyperlink, and [plaintiff] manifested his

assent to those terms by clicking 'I agree.' . . . More was not required.") (internal citation

omitted); *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 289 (D. Mass. 2016) (Saylor, J.) (quoting

*Cullinane* with approval); see also *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75

(2013), *aff'd*, 478 Mass. 169 (2017) (requiring "[r]easonably conspicuous notice of the existence

of contract terms and unambiguous manifestation of assent to those terms by consumers").

Yelp's terms of service have themselves been held enforceable on similar facts. *Lily Jeung v.*

*Yelp, Inc*., No. CV 14-6223 FMO (ASX), 2015 WL 12990204, at *3 (C.D. Cal. May 13, 2015)

(holding that plaintiffs "had adequate notice of and agreed to Yelp's Terms of Service" by virtue

of notice a reading, "By clicking the button below, you agree to Yelp's Terms of Service[.]").[1]

This action is plainly governed by the choice-of-law provision in the terms of service:

"California law will govern . . . any claim, cause of action or dispute that might arise between

[DiNapoli] and Yelp (a 'Claim'), without regard to conflict of law provisions." (MacBean Aff.,

Ex. A, ¶ 13). Accordingly, California law applies to DiNapoli's claims.

---

[1] Nor can plaintiff demonstrate that it is unreasonable to apply California law to this dispute. *Bekele*, 199 F. Supp. 3d at 295 (D. Mass. 2016) (holding that clauses in online adhesion contracts "will be enforced provided they have been reasonably communicated and accepted, and if, considering all the circumstances, it is reasonable to enforce the provision at issue."), quoting *Cullinane*, 2016 WL 3751652, at *5. Plaintiff can point to no prejudice that would arise from being subject to California substantive law to this action.

7

2941681.v2

## II.     DINAPOLI'S COMPLAINT MUST BE STRICKEN UNDER THE CALIFORNIA ANTI-SLAPP LAW.

### A.     The California Anti-SLAPP Law Generally.

Under the California anti-SLAPP Law, Cal. Civ. Proc. Code, § 425.16, any party

subjected to a "strategic lawsuit against public participation"—a suit based on an "act in

furtherance of a person's right of petition or free speech under the United States or California

Constitution in connection with a public issue"—may bring a special motion to strike. Cal. Civ.

Proc. Code § 425.16(e) (emphasis supplied). Born of "a disturbing increase in lawsuits brought

primarily to chill the valid exercise of the constitutional rights of freedom of speech," Cal. Civ.

Proc. Code, § 425.16, the law is intended to "nip SLAPP litigation in the bud[,]" by quickly

disposing of claims that target the exercise of free-speech rights. *Braun v. Chronicle Publ'g Co.*,

52 Cal. App. 4th 1036, 1042 (1997). It must be "construed broadly." *Id.* at § 425.16(a)(1). The

First Circuit has held that state anti-SLAPP laws govern state-law claims brought in federal

court. *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010) (applying Maine anti-SLAPP law in

federal court); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)

(motions to strike under California's anti-SLAPP statute may be brought in federal court.).

The California anti-SLAPP Law imposes a two-step process. "First, the court decides

whether the defendant has made a threshold showing that the challenged cause of action is one

arising from protected activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 88 (2002). To make such a

showing here, Yelp need only demonstrate that DiNapoli's claim arises from actions that "fit[]

one of the categories spelled out in . . . section 425.16, subdivision (e)." *Id.* Those include a

"written . . . statement or writing made in a . . . public forum in connection with an issue of

public interest," and "any other conduct in furtherance of the exercise of the constitutional right

of petition or the constitutional right of free speech in connection with a public issue or an issue

8

of public interest." Cal. Civ. Pro. Code § 425.16(e)(3) and (4). If the defendant makes a prima facie showing that its conduct is protected under section 425.16, then the burden shifts to plaintiff to establish that it will probably prevail on the claims by demonstrating that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Wilson v. Parker, Covert & Chidester* 28 Cal.4th 811, 821 (2003). If the plaintiff does not meet this burden, the defendant's motion must be granted. *Varian Medical Systems, Inc. v. Delfino*, 35 Cal.4th 180, 192 (2005).

**B.      DiNapoli's Complaint Arises from Activity Protected under the Anti-SLAPP Law.**

DiNapoli's lawsuit arises from Yelp's publication of a consumer review, a "written . . . statement or writing made in a . . . public forum in connection with an issue of public interest." Cal Code Civ. Proc. § 425.16(e)(3). California courts have repeatedly recognized that consumer information is a matter of public interest under the anti-SLAPP statute. In *Wilbanks v. Wolk*, for example, the defendant posted critical statements about a "viatical settlements" broker on a website. Even though the broker's "business practices [did] not affect a large number of people," the statements were covered because they provided consumer information. 121 Cal.App.4th 883, 899 (2005). Similarly, in *Chaker v. Mateo*, statements posted on "Ripoff Report.com" about plaintiff's business practices and character intended to serve as a warning to consumers were found to be of public interest. 209 Cal.App.4th 1138, 1146 (2012). The Ninth Circuit has also held that "[u]nder California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers." *Makaeff v. Trump University*, LLC, 715 F.3d 254, 262 (9th Cir. 2013); *see also Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1363 (1998) (recognizing the public interest "in knowing about the quality and contents of consumer goods").

Here, the review in question relayed Joanne's experiences in receiving two dental bridges from DiNapoli. According to the review, DiNapoli "ruined" her teeth: "On one side, I can't chew at all, have not been able to enjoy anything hot or cold because it is painful. The other side is way too small, so I often aspirate from not being able to masticate properly. I wake up nightly because my teeth are hitting against each other uncomfortably and have had a headache daily . . . ." Joanne also complained that DiNapoli allegedly did more work than discussed and charged more than agreed. (MacBean Aff., Ex. B). The same reviewer later wrote that the bridges resulted in "unbearable" pain, and when she complained to DiNapoli he called her "a liar," "screamed at me," and "said I was a danger and was going to call the police on me." (*Id.*); *Chaker*, 209 Cal.App.4th at 1146 ("statements . . . about [plaintiff's] character and business practices plainly fall within the rubric of consumer information . . . and were intended to serve as a warning to consumers . . . ."). Against the backdrop of other listings for dental services in the Boston area, this information is likely "to aid consumers choosing among [products and services]." *Wilbanks*, 121 Cal.App.4th at 899-900. [2]

DiNapoli can hardly deny that the public has an interest in his reviews on Yelp. For one thing, he claims that Joanne's review caused him $373,687.50 in lost profits and other damages, suggesting a high level of public attention. (Complaint, p. 6). For another, DiNapoli has posted promotional information about his "high quality" dental practice on Yelp through his business account. (MacBean Aff., Ex. B at 2). Moreover, DiNapoli copied and pasted four positive Yelp reviews onto his own website, further demonstrating that he believes the general public will find them useful. (Pyle Aff, Ex. 1) (e.g. "Best Doctor ever!!! Great environment also. I went to do a

---

[2] The Court my take judicial notice that the Commonwealth of Massachusetts deems the quality of its dentists to be a matter of public concern, and that complaints like Joanne's could be a subject of inquiry at the Board of Registration in Dentistry. https://www.mass.gov/orgs/board-of-registration-in-dentistry

root canal and a crown, both procedures went real smoothly. I will definitely recommend this

dental office to anybody.") "By disseminating this information to the general public, [Plaintiff

himself] must believe the public is interested in [his] activities." *Summit Bank v. Rogers* 206

Cal.App.4th 669, 694 (2012) (ruling that public interest requirement was satisfied, where, among

other things, defendant promoted itself on the internet); *cf. Chaker*, 209 Cal.App.4th at 1146-47

("[h]aving elected to join the topix Web site, [plaintiff] . . . must have recognized that other

participants . . . would have a legitimate interest in knowing about his character . . . .").

       The lawsuit is also premised on Yelp's alleged acts in furtherance of the right of petition

or free speech in connection with a public issue, which are protected by subsection (e)(4) of the

anti-SLAPP Law. Cal. Civ. P. 425.16(e)(4). The right of freedom of speech is "broad" and

includes the right to distribute information. *Martin v. City of Struthers*, 319 U.S. 141, 143

(1943); *Van Nuys Publishing Co. v. City of Thousand Oaks*, 5 Cal.3d 817, 821 (1971). In *Hupp v.

Freedom Communications, Inc.*, the court determined that a newspaper's publication and

maintenance of its online forum arose from its acts in furtherance of its free speech rights and

was therefore protected under the anti-SLAPP statute. 221 Cal.App.4th 398, 405 (2013). As the

*Hupp* court explained: "[m]aintaining a forum for discussion of issues of public interest is a

quintessential way to facilitate rights, and the [defendant] has no liability for doing so." *See also

Cross v. Facebook*, 2017 WL 3404767, at \*1 (Cal. Ct. App. Aug. 9, 2017) (holding that

Facebook's decision not to remove third party content plaintiff objected to was an act "in

furtherance of the . . . right of petition or free speech" pursuant to § 425.16, subd. (b)(1)).

Actions targeting "the way a content provider chooses to deliver, present, or publish news

content on matters of public interest," are covered by subsection (e)(4). *Greater Los Angeles

Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 418 (9th Cir. 2014).

Other courts have noted the role Yelp plays in operating a free public forum for online speech. *E.g., Levitt v. Yelp! Inc*. (9th Cir. 2014) 765 F.3d 1123, 1126 ("Today, individuals can share their opinions with the entire world courtesy of a few taps on the keyboard.  [Yelp] provides an online forum on which its users express opinions as to services ranging from dog walkers to taco trucks."); *see also Edwards v. District of Columbia* (D.C. Cir. 2014) 755 F.3d 996, 1006-7 ("Further incentivizing a quality consumer experience are the numerous consumer review websites, like Yelp . . . which provide consumers a forum to rate the quality of their experiences . . . That the coal of self-interest often yields a gem-like consumer experience should come as no surprise."). As these authorities demonstrate, publishing consumer information and maintaining a forum for discussion of issues of public interest—as Yelp does—unquestionably involves the exercise of free speech.

**C.     DiNapoli Cannot Show a Probability of Success on his Claims.**

Because Yelp has shown that DiNapoli's Complaint arises from conduct protected under subsection (e) of the California anti-SLAPP Law, the burden shifts to him to establish a *probability* that he will prevail over Yelp on his claims. To do so, he must show that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Wilson*, 28 Cal.4th at 821. "If the pleadings are not adequate to state a cause of action," of course, then "the plaintiff has failed to carry his burden in resisting the motion." *See Vogel v. Felice* 127 Cal.App.4th 1006, 1008, 1019, fn.7 (2005); *Drum v. Bleau, Fox & Associates*, 107 Cal.App.4th 1009, 1018-19 (2003) (overruled other grounds). However, to avoid dismissal, DiNapoli must do more than merely *state* a claim; he must "establish evidentiary support for the claim[s]." *Wilson*, 28 Cal. 4th at 821; *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (plaintiff must adduce "competent, admissible evidence"

12

showing that he has a legally sufficient claim). DiNapoli's claims, in other words, must survive a test akin to summary judgment, *Taus v. Loftus*, 40 Cal. 4th 684, 714 (2007), including a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* at 713-14.

DiNapoli cannot carry this heavy burden, because his claims are squarely barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). That statute, with exceptions inapplicable here, preempts any cause of action seeking to hold a provider of a website liable for content supplied by another "information content provider." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, No. 16-276, 2017 WL 69715 (U.S. Jan. 9, 2017). It states: "No provider … of an interactive computer service," such as Yelp, "shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Users who post content, such as Joanne, are "information content provider[s]" under Section 230's definition of a party "responsible, in whole or in part, for the creation or development of information." *Id.* § 230(f)(3). A website loses immunity only if it "create[s]" or "develop[s]" the allegedly unlawful content itself. *Id.* Section 230 preempts state-law claims that are inconsistent with its broad immunity. *Id*. § 230(e)(3) (precluding liability under "any State or local law that is inconsistent with this section.")

As this Court has previously recognized, Section 230 "was intended to prevent tort liability from 'chilling' online speech and to 'remov[e] the disincentives to self-regulation that would otherwise result if liability were imposed on intermediaries that took an active role in screening content'—for example, by filtering or editing out obscene or otherwise inappropriate content." *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343*,* 367 (D. Mass. 2017) (Saylor, J.), quoting *Universal Commc'n. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418–19 (1st Cir. 2007).

Section 230 reflects Congress's "policy choice" that the law should not "deter harmful online speech through the … route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Lycos*, 478 F.3d at 418 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

In accordance with this legislative purpose, "[c]ourts, in the First Circuit and elsewhere, have consistently held that lawsuits seeking to impose liability for the 'exercise of a publisher's traditional editorial functions'" over third-party content—"such as deciding whether to publish, withdraw, postpone or alter" it—"'are barred' by the statute." *Ayyadurai*, 270 F. Supp. 3d at 367, quoting *Zeran*, 129 F.3d at 330. "There has been near-universal agreement that section 230 should not be construed grudgingly," and the "broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party." *Jane Doe No. 1,* 817 F.3d at 18, 19; *id*. at 29 ("Congress did not sound an uncertain trumpet when it enacted the CDA, and it chose to grant broad protections to internet publishers").

"Congress enacted [Section 230] partially in response to court cases," like this one, seeking to hold "internet publishers liable for defamatory statements posted by third parties on message boards maintained by the publishers." *Jane Doe No. 1,* 817 F.3d at 18, citing *Stratton Oakmont, Inc. v. Prodigy Servs. Co.,* 1995 WL 323710, at *1, *5 (N.Y. Sup. Ct. May 24, 1995) (holding Prodigy liable because, unlike other online providers, it had screened or edited content on its message board). However, Section 230 immunity applies not only to defamation claims, but to any claim that treats an online provider as a publisher of third-party content, regardless of the injury asserted or the legal theory advanced. "[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what

14

matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009), as amended (Sept. 28, 2009); *Lycos,* 478 F.3d at 419, 422 (dismissing claims under Florida securities and cyberstalking statutes, and holding that "immunity extends beyond publisher liability in defamation law to cover any claim that would treat Lycos 'as the publisher'"); *Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003) (negligence claim).

Section 230 provides "*immunity from suit* rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 254 (4th Cir. 2009) (emphasis in original) (quotation marks omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) ("determinations of immunity … should be resolved at an earlier stage of litigation" given law's role "in an open and robust internet"). Accordingly, scores of lawsuits have been dismissed early where, as here, they assert claims against online providers based on third-party content. *See, e.g.*, *Lycos*, 478 F.3d 413 (affirming 12(b)(6) dismissal) (same); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (same); *Ayyadurai,* 270 F. Supp. 3d 343 (same).

The First Circuit has articulated a straightforward three-part test for the application of Section 230. A defendant is immune from suit where "(1) [it] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [defendant] 'as the publisher or speaker' of that information." *Lycos, Inc.*, 478 F.3d at 418, quoting 47 U.S.C. § 230. Under this test, DiNapoli's claims are plainly preempted.

First, Yelp is a website operator, and therefore is a "provider … of an interactive computer service." *See Lycos,* 478 F.3d at 419 ("web site operators … are providers of

interactive computer services within the meaning of Section 230"); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (en banc) (websites are the "most common interactive computer services"). The complaint specifically alleges that Yelp provides "internet-based forums where individuals can share experiences and opinions on almost any business or professional service." (Complaint, ¶ 4). Indeed, Yelp has repeatedly been held to be an "interactive computer services provider" for purposes of Section 230. *Kimzey v. Yelp Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) ("Yelp is plainly a provider of an 'interactive computer service' . . . ."); *Levitt v. Yelp! Inc*., No. C-10-1321 EMC, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011), *aff'd,* 765 F.3d 1123 (9th Cir. 2014) ("[t]he CDA immunizes providers of an 'interactive computer service'—such as Yelp").

Second, both of plaintiff's claims are based on "information provided by another information content provider," the January 29, 2016 review posted by Joanne. (Complaint, ¶¶ 12, 31). "[I]mmunity under the CDA depends on the pedigree of the content at issue." *Jones*, 755 F.3d at 409. Plaintiff does not allege that Yelp had anything to do with providing the content of Joanne's post—nor could it, given that the Complaint specifically alleges Joanne is a former patient known to the plaintiff. (Complaint, ¶ 12).

Third, DiNapoli's claims treat Yelp "as the publisher or speaker" of Joanne's review. 47 U.S.C. § 230(c)(1). Both of his claims assert damage from Yelp's alleged publication choices relating to the review—specifically, the decisions to characterize the review as "recommended," to list it above other, positive reviews, and to display advertising for DiNapoli's competitors near it. (Complaint, ¶¶ 24, 28). These choices involve Yelp's "exercise of a publisher's traditional editorial functions, such as deciding whether to publish, withdraw, postpone or alter content." *Zeran*, 129 F.3d at 330 (emphasis supplied). Any action that "can be boiled down to deciding

16

whether to exclude material that third parties seek to post online," is "perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71; *see also Braverman v. Yelp, Inc.*, 2013 N.Y. Misc. LEXIS 2764 (N.Y. Sup. Ct. June 28, 2013) (dismissing claim by dentist based on Yelp's alleged filtering of positive reviews, and listing of competing dentists, based on Section 230), citing *Jurin v. Google Inc.*, 695 F. Supp.2d 1117, 1123 (E.D. Cal. 2010) (providing a space and service for paid advertisers is "tantamount to the editorial process protected by the CDA").

DiNapoli's allegation that Yelp characterized the review as "recommended" does not transform Yelp into the "creat[or]" or "develop[er]" of Joanne's allegedly defamatory review. 47 U.S.C. § 230(f)(3). To meet the "content creation" exception to Section 230 immunity, a plaintiff must show that the website "materially contribut[ed] to [the] alleged unlawfulness" of third-party content. *Roommates.com, LLC*, 521 F.3d at 1168. Thus, in *Ayyadurai*, this Court held that a user of a blog was entitled to Section 230 immunity where he selected a post generated by another user and republished it in a collection of the "Funniest/Most Insightful Comments of the Week." *Ayyadurai*, 270 F. Supp. 3d at 368. Even though the user "arguably adopted or ratified the comments by selecting them for re-publication," the Court held, to impose liability on such a theory "'is not only inconsistent with the material contribution standard of 'development' but also abuses the concept of responsibility. A website operator cannot be responsible for what makes another party's statement actionable by commenting on that statement post hoc.'" *Id.*, quoting *Jones*, 755 F.3d at 415 (holding Section 230 immunity applied even where website moderator commented on third-party post alleging teacher was sexually promiscuous by asking "Why are all high school teachers freaks in the sack?"). The same principle applies to Yelp's categorization of Joanne's post as "recommended."

17

Nor can DiNapoli plead around Section 230 immunity with his threadbare allegation that Yelp engaged in "extortionary" tactics. (Complaint, ¶ 35). DiNapoli does not explicitly set forth the basis for this epithet, but the complaint appears to imply that Yelp "re-characterized" the negative review as "recommended" in retaliation for DiNapoli's decision not to "purchase advertising space on Yelp's website." (Complaint, ¶¶ 23-24). Even if such a motive could reasonably be inferred from the facts alleged,[3] the theory fails to survive Section 230 immunity.

In *Levitt v. Yelp, Inc.,* the plaintiffs alleged that Yelp engaged in "extortion" of their businesses through "alleged manipulation of their review pages—by removing certain reviews and publishing others or changing their order of appearance"—in order to "pressure businesses to advertise" on Yelp. *Levitt v. Yelp! Inc.,* No. C-10-1321 EMC, 2011 WL 5079526, at *1,6 (N.D. Cal. Oct. 26, 2011), *aff'd,* 765 F.3d 1123 (9th Cir. 2014). The district court held that this alleged conduct "falls within the conduct immunized by § 230(c)(1)," because it amounts to nothing more than an attack on Yelp's "exercise of a publisher's traditional editorial functions." *Id.* at *6. The court rejected the plaintiffs' effort "to import an intent-based exception into Section 230, whereby the same conduct that would otherwise be immune under the statute (editorial decisions such as whether to publish or de-publish a particular review) would no longer be immune when motivated by an improper reason, such as to pressure businesses to advertise." *Id.* at *6. "[Section] 230(c)(1) contains no explicit exception for impermissible editorial motive," showing that Congress intended immunity to apply "regardless of whether the publisher acts in

---

[3] Quite apart from Section 230, the Ninth Circuit affirmed dismissal in *Levitt* on the ground that that similar allegations against Yelp—based on supposedly implicit extortion threats conveyed through publishing conduct—failed plausibly to state a claim for "extortion." *Levitt v. Yelp,* 765 F.3d 1123 (9th Cir. 2014). Among other things, the court observed that "there is no allegation that Yelp directly threatened economic harm if the business owners refused to purchase advertising packages from Yelp," and the plaintiff had no "pre-existing right to have positive reviews appear on Yelp's website." *Id.* at 1133-1134. The same is true here.

good faith." *Id.* at *7. So here, DiNapoli cannot plead around Section 230's immunity for such

editorial choices through his baseless allegations that Yelp made them for an improper reason.[4]

DiNapoli's complaint therefore cannot survive Section 230, which means he cannot

demonstrate a probability of success on his claims. The special motion to strike under the

California anti-SLAPP Law must be allowed.

## III.   DINAPOLI'S COMPLAINT FAILS TO STATE A CLAIM.

For the reasons set forth in Section II.C, pertaining to Section 230(c)(1), DiNapoli's

complaint fails to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6);

*Ayyadurai*, 270 F. Supp. 3d at 368 (dismissing claim under Rule 12(b)(6) as barred by Section

230). In addition, DiNapoli's claim based on Mass. Gen. Laws c. 93A must be dismissed for the

independently-sufficient reason that DiNapoli and Yelp agreed that California law, not

Massachusetts law, would govern any claim between them. *Ne. Data Sys., Inc. v. McDonnell

Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir. 1993) (Breyer, J.) (California choice-of-

law provision precluded application of c. 93A to claims within scope of provision).

---

[4] Nor can DiNapoli evade Section 230 by asserting that his claims are based on the advertising solicitations, as opposed to the critical review. The solicitations, after all, "are not the source of [DiNapoli's] reputational injury." *Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 200 (D. Mass. 2015), amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), aff'd, 873 F.3d 313 (1st Cir. 2017). In *Small Justice,* the plaintiff complained about a website's refusal to take down an allegedly defamatory review while simultaneously offering a program through which it offered to assist customers in restoring their reputations. While the district court denied a motion to dismiss on this theory without directly addressing whether it was barred by Section 230, it granted summary judgment and the First Circuit affirmed, holding that plaintiff had failed to "demonstrate a causal link between [the website's] allegedly 'unfair or deceptive' business practices and a 'loss of money or property' by the plaintiffs." *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 325 (1st Cir. 2017). The same requirement of causation applies on a motion to dismiss. *Jane Doe No. 1*, 817 F.3d at 24 (affirming dismissal of c.93A claim, holding that plaintiffs failed to "lay the groundwork for findings of both actual and proximate causation.")

CONCLUSION

For the foregoing reasons, Yelp respectfully requests that this Court grant its special motion to strike pursuant to California Code of Civil Procedure Section 425.16, dismiss this case with prejudice under § 425.16 and Fed. R. Civ. P. 12(b)(6), and award Yelp its reasonable attorneys' fees and costs as required by § 425.16(c).

                            Respectfully Submitted,

                            YELP INC.

                            By its attorneys,

                            /s/ Jeffrey J. Pyle
                            Jeffrey J. Pyle (BBO #647438)
                            jpyle@princelobel.com
                            PRINCE LOBEL TYE LLP
                            One International Place, Suite 3700
                            Boston, Massachusetts 02110
                            Tel:  (617) 456-8018

                            Aaron Schur, Of Counsel
                            aschur@yelp.com
                            Nicolette Martz, Of Counsel
                            nmartz@yelp.com
                            YELP INC.
                            140 New Montgomery St.
                            San Francisco, CA 94105
                            Tel.: (415) 908-3801

CERTIFICATE OF SERVICE

        I hereby certify that on April 30, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have served the foregoing by United States mail on the below-listed counsel who has not yet entered an appearance in this Court:
        David C. Farrell, Esq.
        The Cohen Law Group
        500 Commercial Street, Suite 4R
        Boston, MA 02109

                            /s/ Jeffrey J. Pyle
                            Jeffrey J. Pyle

2941681.v2