# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARIAN DINAPOLI d/b/a ARI FAMILY DENTAL, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-cv-10776 |
| YELP INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT YELP INC.'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Tel: (617) 456-8018

Aaron Schur, *Of Counsel*
aschur@yelp.com
Nicolette Martz, *Of Counsel*
nmartz@yelp.com
YELP INC.
140 New Montgomery St.
San Francisco, CA 94105
Tel.: (415) 908-3801

<u>INTRODUCTION</u>

Plaintiff Arian DiNapoli, a dentist, seeks damages and injunctive relief based on an allegedly defamatory review of his services written by a former patient, "Joanne S." ("Joanne"). Rather than resolve Joanne's concerns directly with her, DiNapoli has chosen to bring claims against Yelp Inc., ("Yelp"), the company that owns and operates the popular website on which Joanne posted her opinions about her apparently unsatisfactory experiences.

DiNapoli's lawsuit is subject to the California anti-SLAPP Law, Cal. Civ. Proc. Code, § 425.16, which requires a party who sues over the exercise of free speech on an issue of public interest to demonstrate a probability of success. Cal. Civ. Proc. Code § 425.16(b),(e). California law governs DiNapoli's claims because he expressly agreed to its application on February 5, 2016, when he registered a Yelp account to manage the listing for his business, "Ari Family Dental." That registration provided DiNapoli with tools to which he would not otherwise have had access, such as the ability to post public responses to consumer reviews (a feature DiNapoli used in response to Joanne's review) and to publicize other information about his business. DiNapoli cannot demonstrate a probability of success, as required, because a federal statute, Section 230 of the Communications Decency Act, provides immunity to sites like Yelp from suits based on posts by their third-party users. 47 U.S.C. § 230(c)(1). All of DiNapoli's claims arise from the review by Joanne, a Yelp user. Accordingly, Yelp's special motion to strike should be granted, and the complaint should be dismissed for failure to state a claim.

In further support of its motion, Yelp submits the accompanying affidavits of Vince Sollitto, Ian MacBean, and Jeffrey Pyle, and further states as follows.

<u>BACKGROUND</u>

The following facts are drawn from the allegations of the complaint, documents referenced therein, and—for purposes of the special motion to strike—the accompanying affidavits of Ian MacBean, Vince Sollitto, and Jeffrey Pyle. *Brill Media Co., LLC v. TCW Group, Inc.* 132 Cal.App.4th 324, 330 (2005) ("In determining whether the moving party has met its initial burden," on an anti-SLAPP motion, "courts consider the pleadings, declarations, and matters that may be judicially noticed.")

Yelp owns and operates Yelp.com, a social networking and search website and related mobile applications. (Affidavit of Vince Sollitto ("Sollitto Aff.") ¶ 3). Yelp allows members of the public to read and write reviews about local businesses, government services, and other entities. (*Id.* ¶ 4). Yelp's goal is to help the public make more informed choices about local businesses, products and services, and to help individuals more fully participate in their local community. (*Id.* ¶ 3). Reviews and star-based ratings of a business appear on the business's Yelp page, along with an aggregate rating. (*Id.* ¶ 11). To enhance the reliability of the website, Yelp uses automated software to categorize reviews as "recommended" or "not recommended." (*Id.* ¶ 17). As described in the Sollitto Affidavit, the software depends on multiple factors and runs on a daily basis—accordingly, reviews commonly switch back and forth from the "recommended" and "not recommended" lists. (*Id.* ¶ 18). The software does not favor advertisers or punish non-advertisers. (*Id.*).

Arian DiNapoli ("DiNapoli") is a West Roxbury dentist doing business as "Ari Family Dental." (First Amended Complaint ("FAC") ¶ 1). On January 29, 2016, a former patient identifying herself as "Joanne S." posted a review of DiNapoli's services on Yelp.com. (FAC ¶ 11; Affidavit of Ian MacBean "MacBean Aff.," Ex. B). This review read:

> Dr. DiNapoli has ruined my teeth. I got two bridges from him. On one side, I can't chew at all, have not been able to enjoy anything hot or cold because it is painful. The other side is way too small, so I often aspirate from not being able to masticate properly. I wake up nightly because my teeth are hitting against each other uncomfortably and have had a headache daily since he "finished" in August, 2015. He did more work than we discussed, charged me significantly more than we'd agreed and does not give receipts for cash, which he then says you never gave him! Beware!

(MacBean Aff., Ex. B at 4). According to DiNapoli's complaint, Yelp displayed the review on the Ari Family Dental review page as one that was "not recommended" by Yelp. (FAC ¶ 12).

On February 5, 2016, a representative of Ari Family Dental, identifying himself as DiNapoli and using the email address frontdesk@arifamilydental.com, registered for a free Yelp business account for Ari Family Dental. (MacBean Aff. ¶ 9, and Ex. D). On the same day, DiNapoli used his business account to respond to the critical review, as follows:

> A note to the potential Reader of the above review:
>
> Please consider the fact that there's always more than one side to a story, and we have a lot to say and explain about the above public review, but due to doctor-patient confidentiality and more importantly as a courtesy we would have to refrain from mentioning them in this public forum. We feel very unfortunate to have been placed in such a situation.
>
> Thank you very much for reading this note.

(MacBean Aff., Ex. B at 4). DiNapoli also used his Yelp business account to add information about Ari Family Dental—such as a statement that reads, "We provide high quality and personal dental treatments for the entire family." (*Id.* ¶ 9). These features would not have been available to DiNapoli unless he had registered for his free business account. (*Id.*).

To create his business account and claim the "Ari Family Dental" page on Yelp's website, DiNapoli had to go to biz.yelp.com to complete an online registration form and electronically submit the form to Yelp. (MacBean Aff. ¶ 10 and Ex. E). The online registration process for a user to claim a business listing states: "By clicking the button below, you represent

that you have authority to claim this account on behalf of this business, and agree to Yelp's

Terms of Service and Privacy Policy." (*Id.*) The words "Terms of Service" were in blue font and

hyperlinked such that when Mr. DiNapoli clicked on the text, he would have been taken to the

Yelp Terms of Service agreement. (*Id.* ¶ 11). The words "button below" refers to a red button

underneath the text that takes the user to the next step in the registration process. (*Id.* ¶ 10). In

order to claim his business listing, DiNapoli would have had to click on the button manifesting

his agreement to the Terms of Service. (*Id.*). As part of the business account claiming process,

Business users also must agree to the Terms of Service and Privacy Policy each time they log

into their business accounts on Yelp. (*Id.* ¶ 11).

Among other things, the terms of service provide that "California law will govern these

Terms, as well as any claim, cause of action or dispute that might arise between you and Yelp (a

'Claim'), without regard to conflict of law provisions." (Mac Bean Aff., Ex. A, ¶ 13 ("CHOICE

OF LAW AND VENUE")).

DiNapoli alleges that on March 9, 2016, approximately a month after he registered for his

business account, "Yelp contacted Ari Family Dental attempting to sell DiNapoli advertising

space on its website." (FAC ¶ 15). DiNapoli declined. (*Id.*).

On June 6, 2016, Joanne posted an "update" to her January 2016 review:

> Update to my previous review: I haven't been able to chew on the bridge Dr.
> DiNapoli put in on the upper left side of my mouth since day one. At first, the
> pain was unbearable, where I couldn't even put my teeth together. I called the
> office and he called me a liar. On February 11, 2016, I showed my friend, who
> works in a lab building bridges, that a shard was sticking out from between the
> bridge and my gum. She told me it was a sliver of the enamel. On February 15,
> the shard came out and so did the constant pain. I was so relieved, but I still can't
> chew on it because it's too sensitive, I feel all hot and cold in the two teeth he
> whittled down to hold the bridge and it still is jarring to put my teeth together.
>
> Tonight, I was sitting down to eat my chicken supper and the other bridge, on the
> bottom right, has come out! I complained to Dr. DiNapoli that the bridge was too

loose and moved when I'd eat, but to no avail. Also, the front tooth I'd told him was hitting funny because of the lower bridge being too short, has broken considerably and is fractured all around, looking like it will split at any time.

I want to warn others because even if you have an excellent case against a dentist, you need to get a lawyer, pay expenses and see another dentist to consult and assess the situation. I used ALL my inheritance to have my teeth fixed and now I'm out of luck. Dr. DiNapoli screamed at me when I called him and said I was a danger and he was going to call the police on me, whereas the last time I saw him, he said he considered me a friend. I guess you're only friends when you don't have issues after he's finished with you.

Anyone know a good dentist? I don't!

(MacBean Aff., Ex. B at 4). DiNapoli did not update his response to reply to this update. (*Id.*).

According to the amended complaint, on October 5, 2016, January 19, 2017, January 26, 2017, Yelp again contacted DiNapoli to try to sell him advertising packages on Yelp. Each time, DiNapoli declined. (FAC ¶¶ 16-21). He alleges that at some point in January after the 26th, Yelp then "suddenly re-characterized [Joanne's] one-star review of DiNapoli's dental practice from 'Unreliable' and 'Not Recommended' to 'Reliable' and 'Recommended,' and promoted said Review to the #3-ranked 'Reliable' and 'Recommended' review of Ari Family Dental." (FAC ¶¶ 22, 32).[1] DiNapoli alleges (1) that this change "displaced" more positive reviews of his practice, (FAC ¶ 25); (2) that Yelp treats certain positive customer reviews of Ari Family Dental as "not recommended," (*Id.* ¶ 24); (3) that Yelp "sold advertising space to nearby dental practices which Yelp knew to be in direct competition with Ari Family Dental," (*Id.* ¶ 28); and (4) that Yelp displayed those ads "immediately adjacent to the sole negative, albeit #3-ranked, review of Ari Family Dental." (*Id.* ¶ 29). DiNapoli contends that he provided Yelp "with direct evidence of the falsity of plaintiff's sole one-star review" and evidence "of the veracity of numerous, more

---

[1] Notwithstanding DiNapoli's allegations, Yelp does not publicly characterize any particular review, through the recommendation software or otherwise, as "reliable" or "unreliable." (Sollitto Aff., ¶ 18).

recent five-star reviews," but Yelp "refused to amend" Joanne's review. (FAC ¶ 27). Without

explanation, DiNapoli labels Yelp's acts "extortionary." (FAC ¶ 36).

DiNapoli filed suit in the Suffolk Superior Court on March 22, 2018. Yelp timely

removed the action to this Court, (Doc. No. 1, Notice of Removal), and filed a special motion to

strike and motion to dismiss on April 30, 2018. (Doc. No. 6). Later that day, DiNapoli filed an

amended complaint, purporting to bring claims for violation of Mass. Gen. Laws c. 93A, § 11

(Count I), "Negligent Mode of Operation," (Count II) and "Intentional Interference with

Business and/or Contractual Relationships." (Count III).

ARGUMENT

## I.  CALIFORNIA LAW APPLIES TO THIS LAWSUIT.

DiNapoli agreed to Yelp's terms of service, which include a California choice-of-law

provision, when he created his business account with Yelp.com. As set forth in the MacBean

Affidavit, on February 5, 2016, DiNapoli "claimed" his business listing for Ari Family Dental by

"clicking" a button on a page of the website that stated: "By clicking the button below, you . . .

agree to Yelp's Terms of Service and Privacy Policy." (MacBean Aff., ¶ 10 and Ex. D). The

words "Terms of Service" were hyperlinked to Yelp's terms of service, which prominently

display the California choice of law provision. (*Id.*, ¶ 11). As the MacBean Affidavit states,

DiNapoli could not have created his business listing without agreeing to the Terms of Service in

this manner. (*Id.*, ¶ 10).

Online terms of service are enforceable under these circumstances. In *Cullinane v. Uber

Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016), for

example, the court held that a hyperlink to terms of service on the final page of a website

registration process, coupled with the words, "By creating an . . . account, you agree to the

Terms of Service & Privacy Policy," was "prominent enough to put a reasonable user on notice of the terms of the Agreement." *Id.* In so holding, the court relied on the longstanding Massachusetts rule that "'[t]ypically, one who signs a written agreement is bound by its terms whether he reads and understands them or not.'" *Id.*, quoting *Awuah v. Coverall N. Am., Inc*., 703 F.3d 36, 44 (1st Cir. 2012) (internal quotations omitted). Other cases are to similar effect. *CR Assocs. L.P. v. Sparefoot, Inc.*, No. CV 17-10551-LTS, 2018 WL 988056, at *4 (D. Mass. Feb. 20, 2018) ( "[T]he availability of the terms of services were communicated to [plaintiff] by a blue hyperlink, and [plaintiff] manifested his assent to those terms by clicking 'I agree.' . . . More was not required.") (internal citation omitted); *Bekele v. Lyft, Inc*., 199 F. Supp. 3d 284, 289 (D. Mass. 2016) (Saylor, J.) (quoting *Cullinane* with approval); see also *Ajemian v. Yahoo!, Inc*., 83 Mass. App. Ct. 565, 574–75 (2013), *aff'd*, 478 Mass. 169 (2017) (requiring "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers"). Yelp's terms of service have themselves been held enforceable on similar facts. *Lily Jeung v. Yelp, Inc*., No. CV 14-6223 FMO (ASX), 2015 WL 12990204, at *3 (C.D. Cal. May 13, 2015) (Plaintiffs "had adequate notice of and agreed to Yelp's Terms of Service" by virtue of notice a reading, "By clicking the button below, you agree to Yelp's Terms of Service[.]").[2]

---

[2] Nor can plaintiff demonstrate that it would be unreasonable to apply California law to this dispute. *Bekele*, 199 F. Supp. 3d at 295 (D. Mass. 2016) (holding that clauses in online adhesion contracts "will be enforced provided they have been reasonably communicated and accepted, and if, considering all the circumstances, it is reasonable to enforce the provision at issue."), quoting *Cullinane*, 2016 WL 3751652, at *5. DiNapoli asserts that he only claimed his account to "contest" Yelp's "portrayal" of the reviews, but as the MacBean affidavit shows, he actually claimed the account more than eleven months before the date he alleges Yelp started portraying Joanne's review as "recommended." (Compare MacBean Aff. ¶ 9 (stating that DiNapoli claimed his account on February 5, 2016, and FAC ¶ 32 (stating that Yelp moved the negative review to "recommended" in January 2017). Moreover, the MacBean affidavit shows that DiNapoli used his account to further his own business interests, including by adding the words, "We provide high quality and personal dental treatments for the entire family" to his Yelp page. (MacBean Aff. ¶ 9). Regardless, DiNapoli can point to no contractual principle that would preclude enforcement of the Terms of Service under the circumstances he describes.

This action is plainly governed by the choice-of-law provision in the terms of service: "California law will govern . . . any claim, cause of action or dispute that might arise between [DiNapoli] and Yelp (a 'Claim'), without regard to conflict of law provisions." (MacBean Aff., Ex. A, ¶ 13). Accordingly, California law applies to DiNapoli's claims.

## II.     DINAPOLI'S COMPLAINT MUST BE STRICKEN UNDER THE CALIFORNIA ANTI-SLAPP LAW.

### A.     The California Anti-SLAPP Law Generally.

Under the California anti-SLAPP Law, Cal. Civ. Proc. Code, § 425.16, any party subjected to a "strategic lawsuit against public participation"—a suit based on an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue"—may bring a special motion to strike. Cal. Civ. Proc. Code § 425.16(e) (emphasis supplied). Born of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech," Cal. Civ. Proc. Code, § 425.16, the law is intended to "nip SLAPP litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997). It must be "construed broadly." *Id.* at § 425.16(a)(1). The First Circuit has held that state anti-SLAPP laws govern state-law claims brought in federal court. *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010) (applying Maine anti-SLAPP law in federal court); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (motions to strike under California's anti-SLAPP statute may be brought in federal court.).

The California anti-SLAPP Law imposes a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 88 (2002). To make such a showing here, Yelp need only demonstrate that DiNapoli's claim arises from actions that "fit[]

one of the categories spelled out in . . . section 425.16, subdivision (e)." *Id.* Those include a

"written . . . statement or writing made in a . . . public forum in connection with an issue of

public interest," and "any other conduct in furtherance of the exercise of the constitutional right

of petition or the constitutional right of free speech in connection with a public issue or an issue

of public interest." Cal. Civ. Pro. Code § 425.16(e)(3) and (4). If the defendant makes a prima

facie showing that its conduct is protected under section 425.16, then the burden shifts to

plaintiff to establish that it will probably prevail on the claims by demonstrating that "the

complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

sustain a favorable judgment." *Wilson v. Parker, Covert & Chidester* 28 Cal.4th 811, 821 (2003).

If the plaintiff does not meet this burden, the defendant's motion must be granted. *Varian*

*Medical Systems, Inc. v. Delfino*, 35 Cal.4th 180, 192 (2005).

**B.      DiNapoli's Complaint Arises from Activity Protected under the Anti-SLAPP Law.**

DiNapoli's lawsuit arises from Yelp's publication of a consumer review, a "written . . .

statement or writing made in a . . . public forum in connection with an issue of public interest."

Cal Code Civ. Proc. § 425.16(e)(3). California courts have repeatedly recognized that consumer

information is a matter of public interest under the anti-SLAPP statute. In *Wilbanks v. Wolk*, for

example, the defendant posted critical statements about a "viatical settlements" broker on a

website. Even though the broker's "business practices [did] not affect a large number of people,"

the statements were covered because they provided consumer information. 121 Cal.App.4th 883,

899 (2005). Similarly, in *Chaker v. Mateo*, statements posted on "Ripoff Report.com" about

plaintiff's business practices and character intended to serve as a warning to consumers were

found to be of public interest. 209 Cal.App.4th 1138, 1146 (2012). The Ninth Circuit has also

held that "[u]nder California law, statements warning consumers of fraudulent or deceptive

business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers." *Makaeff v. Trump University*, LLC, 715 F.3d 254, 262 (9th Cir. 2013); *see also Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1363 (1998) (recognizing the public interest "in knowing about the quality and contents of consumer goods").

Here, the review in question relayed Joanne's experiences in receiving two dental bridges from DiNapoli. According to the review, DiNapoli "ruined" her teeth: "On one side, I can't chew at all, have not been able to enjoy anything hot or cold because it is painful. The other side is way too small, so I often aspirate from not being able to masticate properly. I wake up nightly because my teeth are hitting against each other uncomfortably and have had a headache daily . . . ." Joanne also complained that DiNapoli allegedly did more work than discussed and charged more than agreed. (MacBean Aff., Ex. B). The same reviewer later wrote that the bridges resulted in "unbearable" pain, and when she complained to DiNapoli he called her "a liar," "screamed at me," and "said I was a danger and was going to call the police on me." (*Id.*); *Chaker*, 209 Cal.App.4th at 1146 ("statements . . . about [plaintiff's] character and business practices plainly fall within the rubric of consumer information . . . and were intended to serve as a warning to consumers . . . ."). Against the backdrop of other listings for dental services in the Boston area, this information is likely "to aid consumers choosing among [products and services]." *Wilbanks*, 121 Cal.App.4th at 899-900. [3]

DiNapoli can hardly deny that the public has an interest in his reviews on Yelp. For one thing, he claims that Joanne's review caused him $373,687.50 in lost profits and other damages, suggesting a high level of public attention. (FAC, p. 7). For another, DiNapoli has posted

---

[3] The Court my take judicial notice that the Commonwealth of Massachusetts deems the quality of its dentists to be a matter of public concern, and that complaints like Joanne's could be a subject of inquiry at the Board of Registration in Dentistry. https://www.mass.gov/orgs/board-of-registration-in-dentistry

promotional information about his "high quality" dental practice on Yelp through his business account. (MacBean Aff., Ex. B at 2). Moreover, DiNapoli copied and pasted four positive Yelp reviews onto his own website, further demonstrating that he believes the general public will find them useful. (Pyle Aff, Ex. 1) (e.g. "Best Doctor ever!!! Great environment also. I went to do a root canal and a crown, both procedures went real smoothly. I will definitely recommend this dental office to anybody.") "By disseminating this information to the general public, [Plaintiff himself] must believe the public is interested in [his] activities." *Summit Bank v. Rogers* 206 Cal.App.4th 669, 694 (2012) (ruling that public interest requirement was satisfied, where, among other things, defendant promoted itself on the internet); *cf. Chaker*, 209 Cal.App.4th at 1146-47 ("[h]aving elected to join the topix Web site, [plaintiff] . . . must have recognized that other participants . . . would have a legitimate interest in knowing about his character . . . .").

The lawsuit is also premised on Yelp's alleged acts in furtherance of the right of petition or free speech in connection with a public issue, which are protected by subsection (e)(4) of the anti-SLAPP Law. Cal. Civ. P. 425.16(e)(4). The right of freedom of speech is "broad" and includes the right to distribute information. *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943); *Van Nuys Publishing Co. v. City of Thousand Oaks*, 5 Cal.3d 817, 821 (1971). In *Hupp v. Freedom Communications, Inc.*, the court determined that a newspaper's publication and maintenance of its online forum arose from its acts in furtherance of its free speech rights and was therefore protected under the anti-SLAPP statute. 221 Cal.App.4th 398, 405 (2013). As the *Hupp* court explained: "[m]aintaining a forum for discussion of issues of public interest is a quintessential way to facilitate rights, and the [defendant] has no liability for doing so." *See also Cross v. Facebook*, 2017 WL 3404767, at *1 (Cal. Ct. App. Aug. 9, 2017) (holding that Facebook's decision not to remove third party content plaintiff objected to was an act "in

furtherance of the . . . right of petition or free speech" pursuant to § 425.16, subd. (b)(1)).

Actions targeting "the way a content provider chooses to deliver, present, or publish news content on matters of public interest," are covered by subsection (e)(4). *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 418 (9th Cir. 2014).

Other courts have noted the role Yelp plays in operating a free public forum for online speech. *E.g., Levitt v. Yelp! Inc*. (9th Cir. 2014) 765 F.3d 1123, 1126 ("Today, individuals can share their opinions with the entire world courtesy of a few taps on the keyboard. [Yelp] provides an online forum on which its users express opinions as to services ranging from dog walkers to taco trucks."); *see also Edwards v. District of Columbia* (D.C. Cir. 2014) 755 F.3d 996, 1006-7 ("Further incentivizing a quality consumer experience are the numerous consumer review websites, like Yelp . . . which provide consumers a forum to rate the quality of their experiences . . . That the coal of self-interest often yields a gem-like consumer experience should come as no surprise."). Accordingly, publishing consumer reviews and maintaining a forum for discussion of issues of public interest, as Yelp does, clearly involves the exercise of free speech.

## C.     DiNapoli Cannot Show a Probability of Success on his Claims.

Because Yelp has shown that DiNapoli's Complaint arises from conduct protected under subsection (e) of the California anti-SLAPP Law, the burden shifts to him to establish a *probability* that he will prevail over Yelp on his claims. To do so, he must show that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Wilson*, 28 Cal.4th at 821. "If the pleadings are not adequate to state a cause of action," of course, then "the plaintiff has failed to carry his burden in resisting the motion." *See Vogel v. Felice* 127 Cal.App.4th 1006, 1008, 1019, fn.7 (2005); *Drum v. Bleau, Fox & Associates*, 107 Cal.App.4th 1009, 1018-19 (2003) (overruled other grounds). However,

to avoid dismissal, DiNapoli must do more than merely *state* a claim; he must "establish evidentiary support for the claim[s]." *Wilson*, 28 Cal. 4th at 821; *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (plaintiff must adduce "competent, admissible evidence" showing that he has a legally sufficient claim). DiNapoli's claims, in other words, must survive a test akin to summary judgment, *Taus v. Loftus*, 40 Cal. 4th 684, 714 (2007), including a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* at 713-14.

DiNapoli cannot carry this heavy burden, because his claims are squarely barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). That statute, with exceptions inapplicable here, preempts any cause of action seeking to hold a provider of a website liable for content supplied by another "information content provider." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, No. 16-276, 2017 WL 69715 (U.S. Jan. 9, 2017). It states: "No provider … of an interactive computer service," such as Yelp, "shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Users who post content, such as Joanne, are "information content provider[s]" under Section 230's definition of a party "responsible, in whole or in part, for the creation or development of information." *Id.* § 230(f)(3). A website loses immunity only if it "create[s]" or "develop[s]" the allegedly unlawful content itself. *Id.* Section 230 preempts state-law claims that are inconsistent with its broad immunity. *Id.* § 230(e)(3) (precluding liability under "any State or local law that is inconsistent with this section.")

As this Court has previously recognized, Section 230 "was intended to prevent tort liability from 'chilling' online speech and to 'remov[e] the disincentives to self-regulation that would otherwise result if liability were imposed on intermediaries that took an active role in

screening content'—for example, by filtering or editing out obscene or otherwise inappropriate content." *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 367 (D. Mass. 2017) (Saylor, J.), quoting *Universal Commc'n. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418–19 (1st Cir. 2007). Section 230 reflects Congress's "policy choice" that the law should not "deter harmful online speech through the … route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Lycos*, 478 F.3d at 418 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

In accordance with this legislative purpose, "[c]ourts, in the First Circuit and elsewhere, have consistently held that lawsuits seeking to impose liability for the 'exercise of a publisher's traditional editorial functions'" over third-party content—"such as deciding whether to publish, withdraw, postpone or alter" it—"'are barred' by the statute." *Ayyadurai*, 270 F. Supp. 3d at 367, quoting *Zeran*, 129 F.3d at 330. "There has been near-universal agreement that section 230 should not be construed grudgingly," and the "broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party." *Jane Doe No. 1,* 817 F.3d at 18, 19; *id*. at 29 ("Congress did not sound an uncertain trumpet when it enacted the CDA, and it chose to grant broad protections to internet publishers").

"Congress enacted [Section 230] partially in response to court cases," like this one, seeking to hold "internet publishers liable for defamatory statements posted by third parties on message boards maintained by the publishers." *Jane Doe No. 1,* 817 F.3d at 18, citing *Stratton Oakmont, Inc. v. Prodigy Servs. Co.,* 1995 WL 323710, at *1, *5 (N.Y. Sup. Ct. May 24, 1995) (holding Prodigy liable because, unlike other online providers, it had screened or edited content on its message board). However, Section 230 immunity applies not only to defamation claims, but

to <u>any</u> claim that treats an online provider as a publisher of third-party content, regardless of the injury asserted or the legal theory advanced. "[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009), as amended (Sept. 28, 2009); *Lycos,* 478 F.3d at 419, 422 (dismissing claims under Florida securities and cyberstalking statutes, and holding that "immunity extends beyond publisher liability in defamation law to cover any claim that would treat Lycos 'as the publisher'"); *Green v. Am. Online (AOL)*, 318 F.3d 465, 469 (3d Cir. 2003) (negligence claim).

Section 230 provides "*immunity from suit* rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 254 (4th Cir. 2009) (emphasis in original) (quotation marks omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) ("determinations of immunity … should be resolved at an earlier stage of litigation" given law's role "in an open and robust internet"). Accordingly, scores of lawsuits have been dismissed early where, as here, they assert claims against online providers based on third-party content. *See, e.g.*, *Lycos*, 478 F.3d 413 (affirming 12(b)(6) dismissal) (same); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (same); *Ayyadurai,* 270 F. Supp. 3d 343 (same).

The First Circuit has articulated a straightforward three-part test for the application of Section 230. A defendant is immune from suit where "(1) [it] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [defendant] 'as the publisher or

speaker' of that information." *Lycos, Inc.*, 478 F.3d at 418, quoting 47 U.S.C. § 230. Under this test, DiNapoli's claims are plainly preempted.

First, Yelp is a website operator, and therefore is a "provider … of an interactive computer service." *See Lycos*, 478 F.3d at 419 ("web site operators … are providers of interactive computer services within the meaning of Section 230"); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (en banc) (websites are the "most common interactive computer services"). The complaint specifically alleges that Yelp provides "online forums where individuals can share experiences and opinions on almost any business or professional service." (FAC ¶ 4). Indeed, Yelp has repeatedly been held to be an "interactive computer services provider" for purposes of Section 230. *Kimzey v. Yelp Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) ("Yelp is plainly a provider of an 'interactive computer service' . . . ."); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014) ("[t]he CDA immunizes providers of an 'interactive computer service'—such as Yelp").

Second, all of plaintiff's claims are based on "information provided by another information content provider," the January 29, 2016 review posted by Joanne. (FAC ¶¶ 11, 32). "[I]mmunity under the CDA depends on the pedigree of the content at issue." *Jones*, 755 F.3d at 409. Plaintiff does not allege that Yelp had anything to do with providing the content of Joanne's post—nor could it, given that the amended specifically alleges that Joanne is a former patient known to the plaintiff. (FAC ¶ 11).

Third, DiNapoli's claims treat Yelp "as the publisher or speaker" of Joanne's review. 47 U.S.C. § 230(c)(1). All of his claims assert damage from Yelp's alleged publication choices relating to the review—specifically, the decisions to characterize the review as "recommended,"

to list it above other, positive reviews, to "refus[e] to amend" the review, and to display advertising for DiNapoli's competitors near it. (FAC, ¶¶ 27, 32, 42, 45). These choices involve Yelp's "exercise of a publisher's traditional editorial functions, such as deciding whether to publish, withdraw, postpone or alter content." *Zeran*, 129 F.3d at 330 (emphasis supplied). Any action that "can be boiled down to deciding whether to exclude material that third parties seek to post online," is "perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71; *see also Braverman v. Yelp, Inc.*, 2013 N.Y. Misc. LEXIS 2764 (N.Y. Sup. Ct. June 28, 2013) (dismissing claim by dentist based on Yelp's alleged filtering of positive reviews, and listing of competing dentists, based on Section 230), citing *Jurin v. Google Inc*., 695 F. Supp.2d 1117, 1123 (E.D. Cal. 2010) (providing a space and service for paid advertisers is "tantamount to the editorial process protected by the CDA").

DiNapoli's allegation that Yelp characterized the review as "recommended" does not transform Yelp into the "creat[or]" or "develop[er]" of Joanne's allegedly defamatory review. 47 U.S.C. § 230(f)(3). To meet the "content creation" exception to Section 230 immunity, a plaintiff must show that the website "materially contribut[ed] to [the] alleged unlawfulness" of third-party content. *Roommates.com, LLC*, 521 F.3d at 1168. Thus, in *Ayyadurai*, this Court held that a user of a blog was entitled to Section 230 immunity where he selected a post generated by another user and republished it in a collection of the "Funniest/Most Insightful Comments of the Week." *Ayyadurai*, 270 F. Supp. 3d at 368. Even though the user "arguably adopted or ratified the comments by selecting them for re-publication," the Court held, to impose liability on such a theory "'is not only inconsistent with the material contribution standard of 'development' but also abuses the concept of responsibility. A website operator cannot be responsible for what makes another party's statement actionable by commenting on that statement post hoc.'" *Id.*,

quoting *Jones*, 755 F.3d at 415 (holding Section 230 immunity applied even where website moderator commented on third-party post alleging teacher was sexually promiscuous by asking "Why are all high school teachers freaks in the sack?"). The same principle applies to Yelp's categorization of Joanne's post as "recommended."

Nor can DiNapoli plead around Section 230 immunity with his threadbare allegation that Yelp engaged in "extortionary" tactics. (FAC ¶ 36). DiNapoli does not explicitly set forth the basis for this epithet, but the amended complaint implies that Yelp "intentionally resurrected" the negative review as "recommended" in retaliation for DiNapoli's decision not to "purchase advertising space on Yelp's website." (FAC ¶ 45). Even if such a motive could reasonably be inferred from the facts alleged,[4] the theory fails to survive Section 230 immunity.

In *Levitt v. Yelp, Inc.*, the plaintiffs alleged that Yelp engaged in "extortion" of their businesses through "alleged manipulation of their review pages—by removing certain reviews and publishing others or changing their order of appearance"—in order to "pressure businesses to advertise" on Yelp. *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *1,6 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014). The district court held that this alleged conduct "falls within the conduct immunized by § 230(c)(1)," because it amounts to nothing more than an attack on Yelp's "exercise of a publisher's traditional editorial functions." *Id.* at *6. The court noted that there was no "bad faith exception to immunity under § 230(c)(1)," and that creating such an exception "could force Yelp to defend its editorial decisions in the

---

[4] Quite apart from Section 230, the Ninth Circuit affirmed dismissal in *Levitt* on the ground that that similar allegations against Yelp—based on supposedly implicit extortion threats conveyed through publishing conduct—failed plausibly to state a claim for "extortion." *Levitt v. Yelp*, 765 F.3d 1123 (9th Cir. 2014). Among other things, the court observed that "there is no allegation that Yelp directly threatened economic harm if the business owners refused to purchase advertising packages from Yelp," and the plaintiff had no "pre-existing right to have positive reviews appear on Yelp's website." *Id.* at 1133-1134. The same is true here.

future on a case by case basis and reveal how it decides what to publish and what not to publish. Such exposure could lead Yelp to resist filtering out false/unreliable reviews (as someone could claim an improper motive for its decision), or to immediately remove all negative reviews about which businesses complained (as failure to do so could expose Yelp to a business's claim that Yelp was strong-arming the business for advertising money)." *Id.* at *8. So here, DiNapoli cannot plead around Section 230's immunity for such editorial choices through his baseless allegations that Yelp made them for an improper reason.[5]

DiNapoli's complaint therefore cannot survive Section 230, which means he cannot demonstrate a probability of success on his claims. The special motion to strike under the California anti-SLAPP Law must be allowed.

## III. DINAPOLI'S COMPLAINT FAILS TO STATE A CLAIM.

For the reasons set forth in Section II.C, pertaining to Section 230(c)(1), DiNapoli's complaint fails to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Ayyadurai*, 270 F. Supp. 3d at 368 (dismissing claim under Rule 12(b)(6) as barred by Section 230). In addition, DiNapoli's claim based on Mass. Gen. Laws c. 93A must be dismissed for the independently-sufficient reason that DiNapoli and Yelp agreed that California law, not

---

[5] Nor can DiNapoli evade Section 230 by asserting that his claims are based on the advertising solicitations, as opposed to the critical review. The solicitations, after all, "are not the source of [DiNapoli's] reputational injury." *Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 200 (D. Mass. 2015), amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), aff'd, 873 F.3d 313 (1st Cir. 2017). In *Small Justice,* the plaintiff complained about a website's refusal to take down an allegedly defamatory review while simultaneously offering a program through which it offered to assist customers in restoring their reputations. While the district court denied a motion to dismiss on this theory without directly addressing whether it was barred by Section 230, it granted summary judgment and the First Circuit affirmed, holding that plaintiff had failed to "demonstrate a causal link between [the website's] allegedly 'unfair or deceptive' business practices and a 'loss of money or property' by the plaintiffs." *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 325 (1st Cir. 2017). The same requirement of causation applies on a motion to dismiss. *Jane Doe No. 1*, 817 F.3d at 24 (affirming dismissal of c.93A claim, holding that plaintiffs failed to "lay the groundwork for findings of both actual and proximate causation.")

Massachusetts law, would govern any claim between them. *Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co*., 986 F.2d 607, 610 (1st Cir. 1993) (Breyer, J.) (California choice-of-law provision precluded application of c. 93A to claims within scope of provision).

<u>CONCLUSION</u>

For the foregoing reasons, Yelp respectfully requests that this Court grant its special motion to strike pursuant to California Code of Civil Procedure Section 425.16, dismiss the amended complaint with prejudice under § 425.16 and Fed. R. Civ. P. 12(b)(6), and award Yelp its reasonable attorneys' fees and costs as required by § 425.16(c).

Respectfully Submitted,

YELP INC.

By its attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Tel: (617) 456-8018

Aaron Schur, *Of Counsel*
aschur@yelp.com
Nicolette Martz, *Of Counsel*
nmartz@yelp.com
YELP INC.
140 New Montgomery St.
San Francisco, CA 94105
Tel.: (415) 908-3801

Dated: May 14, 2018

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle